UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROGER J. DEMING,

        Plaintiff,

  v.

FIRST FRANKLIN, A DIVISION OF NATIONAL CITY BANK, MERRILL LYNCH & CO., INC., and BANK OF AMERICA CORPORATION,

        Defendants.

Case No. 09-5418RJB

ORDER DENYING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

This matter comes before the Court on Defendants' Motion to Dismiss (Dtk. 25). The Court has considered the relevant documents and the remainder of the file herein.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On July 10, 2009, Plaintiff Roger Deming filed a complaint against the Defendants First Franklin ("Franklin"), Merrill Lynch ("Merrill"), and Bank of America ("BoA") alleging that the Defendants violated the Washington State Consumer Loan Act, Revised Code of Washington ("RCW") 31.04 and the Washington Consumer Protection Act, RCW 19.86. Dtk. 1. On December 4, 2009, the Plaintiff filed an amended complaint which alleges the Defendants violated the Washington Consumer Protection Act, committed fraud through concealment, negligence, and breach of contract. Dkt. 23. Plaintiff specifically contests the Administration and Compliance Review fees charged as part of two mortgages obtained by Plaintiff. Dkt. 23, p.

ORDER - 1

4-7. Plaintiff claims that they are unlawful, or in the alternative, that he received no value in exchange for the charging of the fees. *Id*.

The Defendants now move to dismiss Plaintiff's first amended complaint. Dkt. 25. Defendants assert that the claims alleged by the Plaintiff fails as a matter of law because Plaintiff seeks to impose state-law limitations on the real estate lending activity of a national bank, and, accordingly, his claims are preempted by federal law. Dkt. 25., p. 1. Furthermore, Defendants assert that the Plaintiff's claims would still fail even if they were not preempted because he has failed to allege facts upon which relief may be granted. Defendants argue that each claim is based on the purported collection of a fee that was fully disclosed and authorized under all applicable law. Dkt. 25, p. 2. Defendants request that the Plaintiff's amended complaint be dismissed without leave to amend. *Id*.

## II. DISCUSSION

**A. Legal Standards**

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Under Fed. R. Civ. P. 12 (b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Dismissal of a complaint may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*internal citations omitted*).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(*citing Twombly*, at 570). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. First, "a court considering

ORDER - 2

a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.*, at 1950.  Secondly, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*  "In sum, for a complaint to survive a motion to dismiss the non-conclusory factual content, and reasonable inferences from that content must be plausibly suggestive of a claim entitling the pleader to relief." *Moss v. U.S. Secret Service,* 2009 WL 2052985 (9th Cir. July 16, 2009).

Additionally, courts may consider any facts properly subject to judicial notice. *See Mack v. South Bay Beer Distributors, Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986) (a court may take judicial notice of "matters of public record") overruled in part on other grounds by *Astoria Federal Sav. and Loan Ass'n v. Solimino*, 501 U.S. 104 (1991); *see also Intestate Natural Gas Co. v. Southern California Gas Co.*, 209 F.2d 380, 385 (9th Cir. 1953) ("[The court] may take judicial notice of records and reports of administrative bodies").

If a claim is based on a proper legal theory but fails to allege sufficient facts, the plaintiff should be afforded the opportunity to amend the complaint before dismissal. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983).  If the claim is not based on a proper legal theory, the claim should be dismissed. *Id*.  "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." *Moss v. U.S. Secret Service,* 2009 WL 2052985 (9th Cir. July 16, 2009).

As a preliminary matter, the Plaintiff objects to the Defendants' motion to dismiss being converted to a summary judgment. Dkt. 29, p. 5.  The Defendants have not provided material outside the pleadings.  Moreover, they appear to argue that their motion should remain a motion to dismiss.  Dkt. 25, p. 6-7, Dkt. 30, p. 3.  Since all parties appear to agree that the motion to dismiss should not be converted, and the Court does not see reason to convert the motion to dismiss, the Defendants' motion will remain a motion to dismiss.

**B. Claims against Merrill Lynch and Bank of America**

Defendants contend that Plaintiff's first amended complaint and the matters of judicial notice establish that Plaintiff has failed to state a plausible claim upon which relief can be

ORDER - 3

granted. Dkt. 25, p. 7. Defendants state that the only allegations made by the Plaintiff against Merrill and BoA are that Merrill purchased the First Franklin loan origination and servicing platform from National City Bank and that BoA later acquired Merrill. Dkt. 25, p. 7. Defendants argue that the Plaintiff must allege a harm as a result of the conduct of a particular defendant to have standing to maintain his claims against that defendant. *Id*. Defendants state that Plaintiff acknowledges that all alleged acts were by First Franklin, and that neither Merrill Lynch nor Bank of America made the loan or charged the alleged fees. Accordingly, the Defendants argue, that as a matter of law, the Plaintiff has not alleged any basis upon which Merrill or BoA may be found liable. Dkt. 25, p. 8.

Plaintiff responds by asserting that Merrill and BoA are liable as successors in interest to Franklin, and it is not appropriate to resolve issues regarding successor liability in a motion to dismiss. Dkt. 29, p. 6. Plaintiff states that Washington adheres to the general rule that a corporation purchasing the assets of another corporation does not become liable for the debts and liabilities of the selling corporation. *Id*. However, the Plaintiff states, that there are exceptions to this general rule. *Id*. Plaintiff states that an exception may exist where (1) there is an express or implied agreement for the purchaser to assume liability; (2) the purchase is a de facto merger or consolidation; (3) the purchaser is a mere continuation of the seller; or (4) the transfer of assets is for the fraudulent purpose of escaping liability. *Id*. Plaintiff argues that facts to support the assertion that Merrill and BoA fall into one of the exceptions for successor liability are not yet known. *Id*. Therefore, the Plaintiff asserts, it would be inappropriate to resolve these issues in a motion to dismiss. *Id*.

Plaintiff further asserts that to plead Article III standing, Plaintiff need only allege that he suffered an injury in fact that is fairly traceable to the challenged action and is redressable by a favorable judicial decision. Dkt. 29, p. 6. Plaintiff contends that he has sufficiently alleged injuries traceable to Defendants Merrill Lynch and Bank of America as the successors of First Franklin. Dkt. 29, p. 7.

Defendants Merrill Lynch and Bank of America should not be dismissed from this action. The Plaintiff has stated a claim upon which relief may be granted. Plaintiff has alleged that

ORDER - 4

Merrill Lynch acquired First Franklin loan origination franchise and that Bank of America acquired Merrill Lynch. See Dkt. 23, ¶ 1.1, 3.3, & 3.4. However, the Plaintiff does not allege that Merrill or BoA expressly or impliedly agreed to assume the liabilities of the Franklin; that these were defacto mergers or consolidations; that Merrill or BoA are a mere continuation of the seller; or that the transfer of assets were for a fraudulent purpose. Additionally, the Plaintiff's legal conclusion that Merrill and BoA are successors is not entitled to the assumption of truth under *Iqbal*. Nevertheless, the Court may make reasonable inferences from the alleged facts. The relationship between the various parties is unclear at this point of litigation, but the Plaintiff has established that there is a relationship. This is enough at this point to allow the Plaintiff's claim to move forward. Moreover, Plaintiff has argued that the facts regarding Merrill and BoA's relationship to Franklin are not yet known. It would be inappropriate, at this point, to make a determination regarding their relationship to Franklin. Finally, it would have been inefficient and a waste of judicial resources dismiss the Merrill and BoA, and have Plaintiff file an amended complaint. However, Defendants' motion should be denied without prejudice. They may raise the issue again and support their argument with facts establishing the relationship of Merrill and BoA to Franklin. For the foregoing reasons, the Defendants' motion to dismiss as to Merrill and BoA should be denied without prejudice.

**C. Preemption**

Defendants contend that there is a presumption of preemption under the National Bank Act ("NBA"), 12 U.S.C. §§ 1, et seq., and the regulations promulgated by the Office of the Comptroller of the Currency ("OCC"). Dkt. 25, p. 8. The Defendants state that in areas where there is a history of significant federal presence, such as national banking, there is a presumption in favor of preemption, citing *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 561 (9th Cir. 2002). *Id.* Defendants assert that the National Banking Act is the type of federal presence that preempts state law. Dkt. 25, p. 8-9.

Plaintiff responds by asserting that federal regulation of National Banks does not preempt the entire field of banking law. Dkt. 29, p. 7. Plaintiff states that whatever presumption there was regarding preemption in the banking field was dispositively dispelled by the United States

ORDER - 5

1  Supreme Court. Dkt. 29, p. 7. Plaintiff cites *Cuomo v. Clearing House Ass'n, L.L.C.*, 129 S.Ct.
2  2710 (2009) to support his position. *Id.*

3  In *Cuomo*, the New York Attorney General sent letters to various national banks
4  requesting "in lieu of subpoena" that they provide certain non-public information about their
5  lending practices in order to determine whether the banks had violated New York's fair-lending
6  laws. *Cuomo*, 129 S.Ct. at 2714. The Office of the Comptroller of Currency ("OCC") and a
7  banking trade group, Clearing House Association, (collectively known as "Respondents") filed
8  suits seeking to enjoin the New York Attorney General from seeking the non-public information.
9  *Id.* The Respondents claimed that the Comptroller's regulation promulgated under the National
10 Banking Act ("NBA") prohibits that form of state law enforcement against national banks. *Id.*

11 The United States District Court entered an injunction in favor of Respondents,
12 prohibiting the attorney general from enforcing state fair-lending laws through demands for
13 records or judicial proceedings. *Cuomo*, 129 S.Ct. at 2714. The United States Court of Appeals
14 affirmed. *Id.* The question that was presented to the United States Supreme Court was whether
15 the Comptroller's regulation purporting to pre-empt state law enforcement can be upheld as a
16 reasonable interpretation of the National Banking Act. *Id.* at 2714-15.

17 12 U.S.C. § 484(a), a provision of the National Banking Act, 13 Stat. 99, reads as
18 follows:

> No national bank shall be subject to any visitorial powers except as authorized by
> Federal law, vested in the courts of justice or such as shall be, or have been
> exercised or directed by Congress or by either House thereof or by any committee
> of Congress or of either House duly authorized.

The Comptroller, charged with administering the National Bank Act, adopted, through notice-
and-comment rulemaking, the regulation at issue in *Cuomo*. *Cuomo*, 129 S.Ct. at 2715. The
relevant provision reads as follows:

> (a) *General Rule*. (1) Only the OCC or an authorized representative of the OCC
> may exercise visitorial power with respect to national banks, except as provided
> in paragraph (b) of this section. State officials may not exercise visitorial power
> with respect to national banks, such as conducting examinations, inspecting or
> requiring the production of books or records of national banks, or prosecuting
> enforcement actions, except in limited circumstances authorized by federal law.
> However, production of a bank's records (other than non-public OCC information
> under 12 C.F.R. part 4, subpart C) may be required under normal judicial

ORDER - 6

```
       procedures.
       (2) For purposes of this section, visitorial powers include:
       (i) Examination of a bank;
       (ii) Inspection of a bank's book and records;
       (iii) Regulation and supervision of activities authorized or permitted pursuant to
       federal banking law; and
       (iv) Enforcing compliance with any applicable federal or state laws concerning
       those activities.
```

12 C.F.R. § 7.4000 (2009).

The Supreme Court held that " a sovereign's 'visitorial powers' and its power to enforce the law are two different things... the National Bank Act pre-empts only the former." *Cuomo*, 129 S.Ct. at 2717. "'Visitorial power' in the National Bank Act refers to a sovereign's supervisory powers over corporations." *Cuomo*, 129 S.Ct. at 2721. "They include any form of administrative oversight that allows a sovereign to inspect books and records on demand, even if the process is mediated by a court through prerogative writs or similar means." *Id*.

"When, however, a state attorney general brings suit to enforce state law against a national bank, he is not acting in the role of sovereign-as-supervisor, but rather in the role of sovereign-as-law-enforcer." *Id*. "Such a lawsuit is not an exercise of 'visitorial powers' to include 'prosecuting enforcement actions' in state courts, § 7.4000." *Id*. The court held, in essence, that the letter sent by the attorney general was a vistorial power, which is preempted by the OCC regulation, but bringing judicial enforcement actions are not preempted by the OCC regulation.

It appears that the *Cuomo* case is largely irrelevant under our circumstances. The *Cuomo* decision appears to deal primarily with the definition of visitorial powers and whether the visitorial powers of a state were preempted under the OCC regulation, not whether the NBA preempted state law. While it is true that the *Cuomo* court discussed state laws and the reach of the OCC regulation, the discussion was dicta. Moreover, the discussion revolved around the relationship of the OCC regulation to the NBA and state law enforcement powers. Outside the Supreme Court's discussion of state law enforcement powers, visitorial powers, and the relationship of the OCC regulation to the underlying statute, the Supreme Court is silent as to whether the NBA preempts state law, which is the relevant issue in this case. *Cuomo* simply

ORDER - 7

does not stand for the proposition that because the OCC regulation does not preempt the law enforcement powers of a state, that it does not preempt other areas of the banking field.

However, it appears that the NBA and OCC regulations do not preempt the relevant state laws in this case. "Federal law may pre-empt state law in three different ways." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002). First, Congress may preempt state law by stating in express terms. *Id*. Second, preemption may be inferred when federal regulation in a particular field is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id. (quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In such cases of field preemption, the "mere volume and complexity" of federal regulations demonstrate an implicit congressional intent to displace all state law. *Id*. Finally, preemption may be implied when state law actually conflicts with federal law. *Id*. (*quoting Geier v. Am Honda Motor Co.*, 529 U.S. 861, 884 (2000). Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Id*.

States retain some power to regulate national banks in areas such as contracts, debt collection, acquisition and transfer of property, and taxation, zoning, criminal, and tort law. *Bank of America*, 309 F.3d at 559. However, because there has been a history of significant federal presence in national banking, the presumption against preemption of state law is inapplicable. *Id*.

The Defendants argue that the NBA specifically preempts state laws that limit a National Bank's real estate lending powers or prohibits its ability to charge non-interest fees. Dkt. 25, p. 10. Defendants state that 12 C.F.R. § 34.4 expressly preempts any state law regarding fees. Dkt. 25, p. 11. 12 C.F.R. § 34.4 states in relevant part:

> Except where made applicable by Federal law, state laws that obstruct, impair, or condition a national bank's ability to fully exercise its Federally authorized real estate lending power do not apply to national banks. Specifically, a national bank may make real estate loans under 12 U.S.C. 371 and § 34.3, without regard to state law limitations concerning:
> ***
> (10) Processing, origination, servicing, sale or purchase of, or investment or

ORDER - 8

participation in, mortgages.

Defendants also cite 12 C.F.R. § 7.4002(a), which states a "national bank may charge its customers non-interest charges and fees, including deposit account service charges," to support their argument that the NBA preempts any state law regarding fees. *Id*.

Defendants further argue that the NBA preempts Washington Consumer Protection Law, specifically. Dkt. 25, p. 13. Defendants contend that the OCC enforces federal regulations to resolve questions of unfair and deceptive practice by national banks. *Id*. Defendants assert that since fees are regulated by the NBA, that the Washington Consumer Protection Act cannot apply to those fees. *Id*.

Plaintiff responds by arguing that courts have recognized that the NBA does not preempt the entire field of banking. Dkt. 29, p. 7. Plaintiff also argues that it is not clear if the term "non-interest fees and charges," which is permitted by 12 C.F.R § 7.4002(a), applies to real estate transactions. Dkt. 29, p. 10. Additionally, Plaintiff states that nothing in 12 C.F.R. § 34 indicates that administrative fees on real estate loan settlements are permitted, prohibited, or regulated in any way by the NBA. Dkt. 29, p. 11. Finally, Plaintiff asserts that the Defendants have not shown how Washington's regulation through the Consumer Protection Act will jeopardize the national banking system. Dkt. 29, p. 11.

It appears that the NBA is not so broad as to cover "fees" in this context. First, the Defendants cite 12 C.F.R. § 7.4002(a) to support their assertion that the NBA is controlling law regarding "fees." However, the section cited by the Defendants relate to national bank charges, not real estate loan transactions. It appears that Title 12, Part 7, Subpart D of the C.F.R., the preemption section, does not regulate any loans related to real estate. However, Title 12, Part 34 of the C.F.R. does appear to regulate real estate lending. Although, 12 C.F.R. § 34.4 does not define the scope of "processing, origination, servicing" of a mortgage. It is unclear whether "fees," or as characterized by the Plaintiff, "unearned fees" may be included in the "processing, origination, servicing" of a mortgage. Preemption may be inferred when federal regulation in a particular field is "so pervasive as to make reasonable the inference that Congress left no room

for the States to supplement it." *Bank of America v. City and County of San Francisco*, 309 F.3d 551, 558 (9th Cir. 2002) *(quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). In such cases of field preemption, the "mere volume and complexity" of federal regulations demonstrate an implicit congressional intent to displace all state law. *Id.* In this case, the regulations regarding the field of banking is extensive, but this works against the finding of preemption. The OCC has promulgated several regulations regarding banking, real estate lending, and charges, as is evidenced by 12 C.F.R. § 34.1, et seq. and 12 C.F.R. § 7.0000, et seq. However, the OCC chose not to address fees related to real estate lending specifically. The OCC may have the power to regulate that area, but for whatever reason, it chose not to. The Court will not extend the scope of a regulation where the agencies responsible for such regulation has not sought to encompass an area, and the Court does not see reason for the extension. Fees are not defined by the OCC regulations and it appears that the OCC did not seek to regulate fees. Therefore, since the OCC did not seek to regulate fees, the NBA does not preeempt state law in this context. More specifically, the NBA does not preempt the Washington Consumer Protection Act in regards to fees.

**D. Fraud Claim**

Defendants contend that Plaintiff's claim for must fail as a matter of law because the facts conclusively show that the fees were disclosed. Moreover, the Defendants assert that the Plaintiff needs to plead reliance in order to have a claim for fraud. Finally, Defendants assert that there must be a fiduciary relationship to state a claim for fraud. Dkt. 25, p. 14-16.

Plaintiff responds by asserting that a fiduciary relationship is not required when one party has superior knowledge. Plaintiff states that under Washington state law the requirements for fraud by concealment are different from the requirements for general fraud. Dkt. 29, p. 15.

The general rules with reference to fraud by concealment are: (1) mere silence does not constitute fraud when it relates to matters equally open to common observation or visible to the eye, or where they are discoverable by the exercise of ordinary diligence; (2) where inquiry is made, one owes a duty to answer truthfully; and (3) if the circumstances surrounding the contract impose a duty upon one of the parties to disclose all material facts known to him and not known

ORDER - 10

to the other, want of disclosure with intent to deceive will amount to fraud. *Lincoln v. Keene*, 51 Wash.2d 171, 174 (1957). Ordinarily the duty to disclose a material fact exists only where there is a fiduciary relationship, and not where the parties are dealing at arm's length. *Oates v. Taylor*, 31, Wash.2d 898, 903 (1949). However, a duty to speak does sometimes arise when the parties are dealing at arm's length. *Id*. at 904. That duty arises where the facts are peculiarly within the knowledge of the one person and could not be readily obtained by the other; or where, by the lack of business experience of one of the parties, the other takes advantage of the situation by remaining silent. *Id*.

In this case, the Plaintiff has alleged that the relationship was an arm's length relationship, and that he did not have the means of acquiring information necessary to learn that the fees were "unearned." Dkt. 23, ¶ 7.5. The nature of the fees, which are alleged to be unearned, appears to be not readily obtainable by the Plaintiff. The Plaintiff has alleged enough in his amended complaint to support a legal theory of fraud by concealment. Therefore, the Defendants' motion to dismiss regarding this cause of action should be denied.

**E. Negligence, Breach of Contract, and Injunctive Relief**

Defendants argue that since the basis for these claims, which are the fees, are authorized and fully disclosed, that the Plaintiff's claims regarding negligence, breach of contract, and injunctive relief fail. Dkt. 25, p. 15. Plaintiff disagrees, stating that the fees were deceptive, unlawful and unauthorized without full disclosure. Dkt. 29, p. 16.

The Court has determined that the fees are not governed by the NBA and that there is a cause of action regarding the fees under state law. The appropriateness of the fees are yet to be determined. Therefore, the Plaintiff has alleged enough in his amended complaint to state a cause of action for negligence, breach of contract, and injunctive relief. For the foregoing reasons, the Defendants' motion to dismiss should be denied.

///

///

///

///

ORDER - 11

### III. ORDER

The Court does hereby find and ORDER:

(1) Defendants' Motion to Dismiss (Dkt. 25) is **DENIED**; and

(2) The Clerk is directed to send copies of this Order counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 9th day of March, 2010.

_____
Robert J Bryan
United States District Judge

ORDER - 12